IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DB INSURANCE CO., LTD. (US BRANCH), <br> *Plaintiff* | § § § § | |
| -vs- | § § | SA-24-CV-00122-XR |
| LOAD RUNNERS LOGISTICS, INC., ASSET BASED INTERMODAL, INC., SAMUEL ISRAEL, <br> *Defendants* | § § § § § | |

**ORDER ON MOTION FOR DEFAULT JUDGMENT**

On this date, the Court considered Plaintiff's motion for default judgment (ECF No. 18). No response has been filed and the time to do so has expired. After careful consideration, the Court issues the following order.

BACKGROUND

Plaintiff DB Insurance Co., Ltd. ("Plaintiff" or "DB Insurance") sued Defendants Load Runners Logistics, Inc. ("Load Runners" or the "Insured"), Asset Based Intermodal, Inc. ("ABI"), and Samuel Israel ("Mr. Israel") on February 5, 2024. ECF No. 1. Plaintiff seeks a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), that it has no duty to defend or indemnify Load Runners in a personal injury suit against Load Runners and ABI, filed by Mr. Israel in the 224th District of Bexar County, as Cause No. 2023CI22237, styled *Samuel Israel v. Load Runners Logistics, Inc. and Asset Based Intermodal, Inc.* ("Underlying Lawsuit").

Mr. Israel sued Load Runners and ABI in state court in October 2023, alleging that he was injured by carbon monoxide poisoning while driving a tractor-trailer for Load Runners and ABI on July 12, 2023. *See* ECF No. 1-3. As he was driving, Mr. Israel noticed smoke coming out of the air vents and into the cab of the tractor. *Id.* at 3. He notified his supervisor, who allegedly told

him that, while the vehicle needed repairs, it was safe to drive and he should complete his trip. *Id.* But when Mr. Israel pulled into a truck stop in El Paso, he began to feel faint and then collapsed. *Id.* He was taken to the intensive care unit and diagnosed with carbon monoxide poisoning. *Id.*

On the date Mr. Israel collapsed, Load Runners was insured under a motor carrier insurance policy (the "Policy") issued by DB Insurance. ECF No. 1 ¶ 8. DB Insurance is defending Load Runners in the Underlying Lawsuit, subject to a complete reservation of DB Insurance's rights under the Policy because of the "Employee Indemnification and Employer's Liability" exclusion and all other exclusions, conditions, and/or Policy terms that may bar coverage. *Id.* ¶ 16.

The Policy's Motor Carrier Coverage Form (Form CA 00 20 10 13) provides insurance coverage of various types, subject to the terms therein and all other applicable Policy terms. Section II of that coverage form, titled "Covered Autos Liability Coverage," contains the following "Employee Indemnification and Employer's Liability" exclusion:

**MOTOR CARRIER COVERAGE FORM**
**SECTION II – COVERED AUTOS LIABILITY COVERAGE**
\* \* \*

**B. Exclusions**

This insurance does not apply to any of the following:

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

    a. An "employee" of the "insured" arising out of and in the course of:

        (1) Employment by the "insured"; or

        (2) Performing the duties related to the conduct of the "insured's" business; or

    b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

    (1) Whether the "insured" may be liable as an employer or in any other capacity; and

>> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*See* ECF No. 1-2 at 27.

Section VI of the Coverage Form provides the following definitions:

> "**Bodily Injury**" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.
>
> "**Employee**" includes a "leased worker". "Employee" does not include a "temporary worker".
>
> "**Insured**" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.
>
> "**Temporary worker**" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

*See id.* at 36.

An MCS-90 Endorsement attached to the Policy provides the following definitions:

> "**Accident**" includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.
>
> "**Motor Vehicle**" means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof. Bodily Injury means injury to the body, sickness, or disease to any person, including death resulting from any of these. Property Damage means damage to or loss of use of tangible property.
>
> "**Public Liability**" means liability for bodily injury, property damage, and environmental restoration.
>
> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. **Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment**, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement. It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.
>
> The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

*See id.* at 77 (emphasis added).

After Mr. Israel filed suit, Load Runners submitted a request for defense and indemnification from Plaintiff with respect to the Underlying Action. *See* ECF No. 1-4 at 2. Subject to a reservation of its right to deny coverage under the Policy and the MCS-90 Endorsement, Plaintiff represented that it would provide a defense in the Underlying Action. *Id.* at 7.

4

**PROCEDURAL HISTORY**

DB Insurance filed its original complaint on February 5, 2024, invoking this Court's federal diversity jurisdiction and seeking a declaration of the parties' rights and duties under the Policy pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. ECF No. 1. Plaintiff seeks a declaration that neither the Policy nor the MCS-90 Endorsement provides coverage for or obligates DB Insurance to pay any final judgment in the Underlying Lawsuit. *See id.* at 7–8.

On February 28, 2024, Plaintiff filed an affidavit of service indicating that ABI had been served on February 15, 2024. ECF No. 6. ABI failed to timely answer or otherwise respond to the Complaint, and the Clerk entered default against ABI on May 6, 2024. *See* ECF No. 12.

Meanwhile, the Court granted Plaintiff's motion for substituted service of process on Load Runners and Mr. Israel. *See* ECF No. 11. On May 15, 2024, Plaintiff filed affidavits of service indicating that Load Runners and Mr. Israel had been served in accordance with the Court's order permitting substituted service of process on May 7, 2024. ECF Nos. 13, 14. Though their answers were due on May 28, 2024, neither Load Runners nor Mr. Israel has filed an answer or other responsive pleading, requested an extension of time to do so, or otherwise appeared. The Clerk entered default against Load Runners and Mr. Israel on June 20, 2024. *See* ECF No. 17.

Plaintiff now moves for default judgment on its claim for declaratory relief against all three Defendants. *See* ECF No. 18. No responses have been filed and the time to do has expired.

**DISCUSSION**

**I.    Legal Standard**

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P.

5

55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2).

A party is not entitled to a default judgment simply because the defendant is in default, however. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In considering a motion for default judgment, the Court must determine: (1) whether default judgment is procedurally warranted, (2) whether the complaint sets forth facts sufficient to establish that the plaintiff is entitled to relief, and (3) what form of relief, if any, the plaintiff should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). The Court examines each factor in turn.

## II. Analysis

### A. Procedural Propriety of Default Judgment

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

#### 1. Personal Jurisdiction

This Court has personal jurisdiction over the parties here, as Plaintiff has properly effected service of process on Defendants in accordance with Texas law. *See Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 911 (W.D. Tex. 2015) ("[T]he Fifth Circuit has recognized, '[f]ederal courts may . . . always assume jurisdiction over a defendant in any action where there is personal, in-state service of process.'" (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 n.2

(5th Cir. 2006))). "[S]ervice of process . . . initiates a defendant's obligations in a civil suit," *Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*, 602 F. App'x 595, 598 (5th Cir. 2015) (per curiam), and "puts a defendant on notice that failure to file an answer to the complaint subjects him to the risk of a default judgment," *SUA Ins. Co. v. Buras*, 421 F. App'x 384, 385 (5th Cir. 2011). Absent proper service of process, a court lacks personal jurisdiction over a defendant, and any default judgment against the defendant would be void. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999).

The Federal Rules provide for service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1); *see also* FED. R. CIV. P. 4(h) (providing that corporations must be served (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, manager, or agent authorized to receive service of process and mailing a copy of each to the defendant). Because this Court sits in the Western District of Texas, it looks to Texas authority for service of process.

Texas Rule of Civil Procedure 106(a) provides two methods for effecting personal service on a defendant: (1) by personal delivery, or (2) by registered or certified mail, return receipt requested. TEX. R. CIV. P. 106(a)(1)–(2). If service by one of the two methods provided in Rule 106(a) fails, a court may, upon a motion supported by a proper affidavit, authorize substitute service pursuant to Texas Rule of Civil Procedure 106(b). Substitute service may be effected: (1) by leaving a copy of the documents with anyone over sixteen years of age at the location of the defendant's usual place of business or usual place of abode as specified by affidavit, or (2) in any other manner deemed to be reasonably effective to give the defendant notice. *Id.* 106(b)(1)–(2).

To effect service of process on a business entity in Texas, the plaintiff must generally serve the entity's registered agent. *Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787 (S.D. Tex. 2010).

Here, Plaintiff filed suit on February 5, 2024, and on February 15, ABI was served by personal delivery of a copy of the summons and complaint to ABI's registered agent, Leeann Ingram. ECF No. 6. Because it was timely and personally served with process in the state of Texas, the Court has personal jurisdiction over ABI. Moreover, because ABI failed to answer or otherwise respond to the complaint within 21 days of being served with process, the Clerk's entry of default against ABI on May 6, 2024 was procedurally proper. *See* ECF No. 12.

In April 2024, Plaintiff sought authorization to serve Mr. Israel and Load Runners by substitute service. ECF No. 9. In accordance with Rule 106(b), Plaintiff's motion was supported by two affidavits showing that personal service was attempted at Mr. Israel's residence and at the usual place of abode of Load Runners' registered agent, Roderick E. Echols, but was unsuccessful in each instance.[1] *See* ECF No. 9-1 at 2; ECF No. 9-2 at 2. The Court granted Plaintiff's motion, ECF No. 11, and Plaintiff served Mr. Israel and Load Runners consistent with the substitute service order on May 7, 2024, *see* ECF Nos. 13, 14 (affidavits of service indicating that Plaintiff's process server effected service by affixing a true copy of the summons and complaint at the addresses identified in the Court's order). Mr. Israel and Load Runners were thus timely and properly served in Texas under state law and are subject to this Court's jurisdiction. Further, because neither Mr. Israel nor Load Runners answered or otherwise responded to the complaint within 21 days after being served with process, the Clerk's entry of default against both parties on June 23, 2024 was procedurally proper. *See* ECF No. 17.

---

[1] Rule 106 requires the plaintiff to demonstrate only unsuccessful attempts at personal service or service by mail; it does not require both.

### 2. Subject Matter Jurisdiction

The Court has an affirmative duty to look into its subject matter jurisdiction. *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001). Plaintiff seeks relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a). The DJA does not itself provide a basis for federal jurisdiction nor does it create a substantive cause of action. 28 U.S.C. § 2201(a); *see Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Here, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

Under 28 U.S.C. § 1332(a), "[t]he district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(2) citizens of a State and citizens or subjects of a foreign state [other than lawful permanent residents of the United States domiciled in the same State]." For diversity jurisdiction to be proper, the "court must be certain that all plaintiffs have a different citizenship from all defendants." *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1258 (5th Cir. 1988). The party asserting federal jurisdiction must "distinctly and affirmatively allege" the citizenship of the parties. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

A corporation is a citizen of its state(s) of incorporation and of the state in which its principal place of business is located, as determined by the "nerve center" test. 28 U.S.C. § 1332(c)(1); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). For individuals, "citizenship has the same meaning as domicile," and "the place of residence is prima facie the domicile." *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).

Plaintiff has adequately alleged complete diversity of citizenship. DB Insurance is a corporation domiciled and organized under the laws of the Republic of Korea, with its principal place of business in the Republic of Korea. Plaintiff is thus a citizen of the Republic of Korea. *See*

ECF No. 1 ¶¶ 1, 5. Plaintiff asserts that both Load Runners (a Texas corporation with its principal place of business in Texas) and ABI (a Delaware corporation with its principal place of business in Texas) are citizens of Texas. *See id.* ¶¶ 2–3, 5. The Court observes that ABI is also a citizen of Delaware, *Stine*, 213 F.2d at 448, but Plaintiff's omission on this point does not destroy diversity. Finally, Plaintiff alleges that Mr. Israel, an individual domiciled in Texas, is a citizen of Texas. *See id.* ¶¶ 4–5.

Plaintiff has also adequately alleged that the amount in controversy exceeds $75,000. In a declaratory judgment action, the amount in controversy "is the value of the right to be protected or the extent of the injury to be prevented." *St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1252–53 (5th Cir. 1998) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)). In a suit seeking a declaratory judgment regarding insurance coverage, "the 'object of the litigation' is the policy and the 'value of the right to be protected' is [the] plaintiff's potential liability under that policy." *Id.* at 1253 (quoting *Allstate Ins. Co. v. Hilbun*, 692 F. Supp. 698, 700 (S.D. Miss. 1988)). In his state-court petition, Mr. Israel asserts damages between $250,000 and $1,000,000. *See* ECF No. 1-3 at ¶ 8.3. This is sufficient to establish the jurisdictional amount and the Court's subject matter jurisdiction over this case.

### B. Sufficiency of Plaintiff's Complaint

"The defendant by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered."

*Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *see also* 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."). In evaluating the sufficiency of Plaintiff's claim for relief, courts rely on Rule 8 caselaw for guidance. *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

Plaintiff seeks relief under the Declaratory Judgment Act ("DJA"), which provides that "[i]n a case of an actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

A district court considering a declaratory judgment action must engage in a three-step inquiry, determining: "(1) whether the declaratory judgment action is justiciable; (2) whether the court has the authority to grant the declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holms County*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).

1. **Justiciability**

The DJA does not create a substantive cause of action. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Rather, "[a] declaratory judgment action is merely a vehicle that allows a party to obtain an 'early adjudication of an actual controversy' arising under other substantive law." *MetroPCS Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:08–CV–1658–D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (quoting *Collin County v. Homeowners*

11

*Ass'n for Values Essential to Neighborhoods*, 915 F.2d 193, 194 (5th Cir. 1991)). "A declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists." *Orix Credit Alliance*, 212 F.3d at 896 (citations omitted). "The 'actual controversy' required under 28 U.S.C. § 2201(a) 'is identical to the meaning of "case or controversy" for the purposes of Article III.'" *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (quoting *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997)).

An insurer has two independent responsibilities relating to coverage—the duty to defend and the duty to indemnify. *See D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).

After being sued in the Underlying Action, Load Runners submitted a request for defense and indemnification from Plaintiff with respect to the Underlying Action. *See* ECF No. 1-4 at 2. Subject to a reservation of its right to deny coverage under the Policy and the MCS-90 Endorsement, Plaintiff represented that it would provide a defense in the Underlying Action. *Id.* at 7. Thus, "the question of the scope of the policies is ripe for determination because, without it, there would be a controversy and disagreement between Plaintiff and Defendant about whether Plaintiff has a duty to defend and indemnify." *Great Am. E&S Ins. Co. v. Viatek Consumer Prod. Grp., Inc.*, No. 1:17-CV-850-RP, 2018 WL 6265112, at *2 (W.D. Tex. Mar. 28, 2018).

Although the question of the insurer's duty to indemnify is typically not ripe until the underlying suit has been resolved, it can be "justiciable before the insured's liability is determined . . . when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis in original).

Several courts have held that an insurer had no duty to defend *or indemnify* based on employee exclusions that were identical or substantially similar to the "Employee Indemnification and Employer's Liability" exclusion at issue here. *See, e.g.*, *Am. Sentinel Ins. Co. v. AR Xpress, LLC*, No. 7:20-CV-28, 2021 WL 12097321, at **5–6 (S.D. Tex. Feb. 10, 2021) (holding there was neither a duty to defend nor indemnify the insured because the status of the employee negated both duties); *Canal Indemnity Ins. Co. v. Texcom Transp., LLC*, No. 3-09-CV-1430-BD, 2010 WL 2301007, at **4–5 (S.D. Tex. Feb. 10, 2021) (insurer had no duty to defend or indemnify its insured in a personal injury lawsuit arising out of the death of one of the insured's drivers and injuries to another because the Motor Carrier Safety Act of 1984, which informed the relevant policy, did not distinguish between "employees" and "independent contractors").

### 2. Requisite Authority

"[A] district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in federal court; and (3) the district court is prohibited from enjoining the state proceedings under [28 U.S.C. §] 2283." *Sherwin-Williams Co.*, 343 F.3d at 388 n.1 (citations omitted).

Nothing before the Court establishes the existence of a similar, parallel state court action relating to this cause. With no evidence of a similar pending state court action, the Court has the authority to grant declaratory relief. *Id.*

### C. Whether Default Judgment is Warranted

"A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.,* 161 F.3d

13

886, 893 (5th Cir. 1998). In deciding whether to exercise its discretion to enter default judgment, the Court considers:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

To begin, taking all factual allegations in the complaint as true, the Court concludes that Plaintiff's allegations state a claim upon which relief can be granted, and default judgment is appropriate.

An insurer has two independent responsibilities relating to coverage—the duty to defend and the duty to indemnify. *See D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).

Two documents determine an insurer's duty to defend—the insurance policy and the third-party plaintiff's pleadings in the underlying litigation, which the court must review "without regard to the truth or falsity of those allegations." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) (citations omitted). This is known as the "eight-corners rule." *Id.* (citations omitted). The rule's name derives from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the plaintiff's pleading. *Id.*

Factual allegations in the pleading that potentially support a covered claim under the policy are all that is needed to invoke the insurer's duty to defend. *Id.* at 310 (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). Since the duty to defend is based solely on the pleadings and policy, it "is a question of law to be decided by the court." *Fielder Rd.*

14

*Baptist Church v. Guide One Elite Ins. Co.*, 139 S.W.3d 384, 388 (Tex. App.—Fort Worth 2004), *aff'd*, 197 S.W.3d 305 (Tex. 2006); *State Farm Lloyd's v. Kessler*, 932 S.W.2d 732, 736 (Tex. App.—Fort Worth 1996, writ denied).

The duty to defend is distinct from, and broader than, the duty to indemnify, which is not governed by the eight-corners rule. *See D.R. Horton–Tex.*, 300 S.W.3d at 743–44; *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004). Generally speaking, the duty to indemnify depends on the facts actually established in the underlying suit. *GuideOne*, 197 S.W.3d at 310; *D.R. Horton–Texas*, 300 S.W.3d at 741 ("In determining coverage, a matter dependent on the facts and circumstances of the alleged injury-causing event, parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify."). An exception to this rule applies when "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *See Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex. 1997) (holding a party may secure a declaratory judgment on the insurer's duty to indemnify before the underlying claim is resolved).

The Court turns first to Plaintiff's duty to defend Load Runners in the Underlying Suit. Insurance policies are construed generally as contracts and must be interpreted to effectuate the intent of the parties at the time the contracts were formed. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977). When the words of a policy are unambiguous, they are to be given their plain, ordinary, and generally accepted meaning, unless the policy clearly indicates that the contractual terms have been used in a different or technical sense. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).

Here, the terms of the agreement between the parties unambiguously exclude coverage for claims by Load Runners' employees. Under the "Employee Indemnification and Employer's Liability" exclusion, the Policy states that the insurer will not cover "[b]odily injury" to [a]n "employee" of the "insured" arising out of and in the course of (1) [e]mployment by the "insured" or (2) [p]erforming the duties related to the conduct of the "insured's" business." ECF No. 1-2 at 27. Mr. Israel's state-court petition asserts that he is an employee of Load Runners and ABI, ECF No.1-3 ¶ 4.1, and Defendants have not asserted otherwise in this action, ECF No. 18 ¶ 3.[2] Thus, under the eight-corners rule, Plaintiff has no duty to defend Load Runners in the Underlying Suit as the injuries in question are explicitly stated as excluded from coverage under the Policy and the MCS-90 Endorsement. For the same reason, Plaintiff has no duty to indemnify Load Runners for Mr. Israel's injuries in the event that he prevails in the Underlying Suit. ECF No .1-2 at 27; *AR Xpress, LLC*, 2021 WL 12097321, at *6; *Texcom Transp., LLC*, 2010 WL 2301007, at **4–5.

Based on the foregoing analysis, the Court concludes that the first *Lindsey* factor weighs in favor of a default judgment. Load Runners, ABI, and Mr. Israel have filed no responsive pleadings and are deemed to have admitted to the facts alleged in the complaint. Thus, there are no material issues in dispute. *Lindsey*, 161 F.3d at 893.

Second, Defendants' failure to answer effectively prejudices Plaintiff as it brings the legal process to a halt, causing substantial prejudice to Plaintiff. *Id.*

Third, the grounds for default are "clearly established" since, throughout this case, Defendants have not responded to the complaint or the Plaintiff's motion. *See J.D. Holdings, LLC v. BD Ventures, LLC,* 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (explaining that default judgment

---

[2] While the Policy does appear to cover injuries to "temporary workers," who are excluded from the definition of "employee," none of the Defendants have argued in this action (or, to the Court's knowledge, in the Underlying Lawsuit) that Mr. Israel was a temporary worker. ECF No.1-2 at 36, 38.

16

is appropriate where the defendants are totally unresponsive and the failure to respond is willful, as reflected by the parties' failure to respond to the complaint or the motion for default judgment).

Fourth, there is no evidence before the Court indicating that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893.

Fifth, Defendants have had approximately four months to respond to Plaintiff's claims or otherwise appear in this matter since being serviced with process. Any purported harshness of a default judgment is mitigated by Defendants' inaction for this time period. *United States v. Rod Riordan Inc.*, No. MO:17-CV-071-DC, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018).

Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by any of the Defendants. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds that it is appropriate to exercise its discretion to grant default judgment in this matter.

### D. Propriety of Declaratory Relief

Under the third step set forth in *Orix Credit Alliance*, a district court faced with an action for declaratory relief must determine whether to exercise or decline jurisdiction. The Fifth Circuit has stated that, when determining whether to exercise or decline jurisdiction over a declaratory judgment action, a district court should consider several important factors: (1) whether a state action is pending in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed the declaratory action suit in anticipation of a suit by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities exist by allowing the declaratory plaintiff to gain precedence in time or to change forums; (5) whether the federal court is convenient for the parties and witnesses; (6) whether retaining the case in federal court will serve judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel

state suit between the same parties is pending. *Sherwin-Williams*, 343 F.3d at 388 (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)).

The record before the Court indicates that the *Trejo* factors balance in favor of resolving Plaintiff's request for declaratory relief. There is no evidence of a parallel state court action. In addition, fairness weighs in favor of granting default judgment, and a declaratory judgment would further judicial efficiency. A declaratory judgment in this case will settle the question of Plaintiff's duty to defend and indemnify and afford Plaintiff relief from uncertainty regarding its duties.

## CONCLUSION

Accordingly, Plaintiff's Motion for Default Judgment (ECF No. 18) is **GRANTED**.

The Court **DECLARES** that Plaintiff DB Insurance Co., Ltd. has neither a duty to defend nor a duty to indemnify Defendant Load Runners Logistics, Inc. from, for, or against Samuel Israel's allegations contained in the petition filed in the 224th District Court of Bexar County as Cause No. 2023CI22237, styled *Samuel Israel v. Load Runners Logistics, Inc. and Asset Based Intermodal, Inc.* under motor carrier insurance Policy No. TCA-P000659-00 or the related MCS-90 Endorsement.

A final judgment in favor of Plaintiff shall issue in accordance with Rule 58. Plaintiff is awarded no monetary damages, and all costs incurred in this lawsuit are taxed against Plaintiff.

It is so **ORDERED**.

**SIGNED** this 15th day of October, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE